UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

GAMAL MOUSA

VERSUS

CAPITAL AREA HUMAN
SERVICES DISTRICT

CIVIL ACTION

NO. 09-CV-770-BAJ-CN

**RULING ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the court on a motion for summary judgment by defendant, Capital Area Human Services District ("defendant") (doc. 13). Plaintiff, Gamal Mousa ("plaintiff"), has opposed the motion (doc. 16), and filed a supplemental memorandum in opposition (doc. 20). Jurisdiction is based on 28 U.S.C. § 1331.

**BACKGROUND**

Plaintiff filed the present suit on July 31, 2009, alleging that defendant terminated his employment based on his ethnicity and religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e, *et seq.* (doc. 1, ¶ 7).

Defendant, in its statement of undisputed facts, sets forth the following facts that it claims are material to the motion now before the Court, as is required by Local Rule 56.1. Because plaintiff has not controverted these facts, they are deemed admitted for purposes of the present motion pursuant to local rule 56.2:[1]

---

[1]Local Rule 56.2 provides:

1. Gamal Mousa (hereinafter referred to as "Mousa") was employed by Capital Area Human Services District (hereinafter referred to as "CAHSD") on or about February 19, 2007 in the position of Internal Auditor. (Petition & Exhibit 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Exhibit 3- Nacoste Affidavit).

2. Mousa was in his probationary period at the time of his termination on Friday, February 23, 2007. (Exhibit 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Link, and Exhibit 3- Link Affidavit).

3. The application and interview process of Mousa revealed to Dr. Jan Kasofsky and Carole Nacoste that Mousa was of Egyptian ethnicity. The application included transcripts from Egypt which had to be reviewed and accepted as sufficient for the state. (Mousa depo pages 13-15 & 25-27, and Exibit 3- Nacoste and Kasofsky Affidavit).

4. On his first day, Monday, his immediate supervisor, Nacoste, gave Mousa a copy of his job description and other relevant documents. Nacoste directed Mousa to read all of the agencies' policies beginning with numbers 2 & 3 and the audit charter and prepare to meet with her and the chief accountant on Friday to coordinate his functions. At that time, Mousa complained about the mismatched furniture and file colors in his office. (Exhibit 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Exhibit 3- Nacoste Affidavit).

5. Tuesday of the week was the Mardis Gras holiday, (Ex. 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Kasofsky).

6. On Wednesday morning Mousa insisted that the organizational charts were incorrect despite being told that it was not his function to change the charts. He further complained about furniture and boxes. (Exhibit 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Exhibit 3- Nacoste Affidavit).

7. On Wednesday afternoon, although he was told it was not his job, Mousa stated that he needed the policy manual in electronic format so he could

---

> Each copy of the papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts as to which there exists a genuine issue to be tried. All material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion, unless controverted as required by this rule.

change the policy manual. He also requested additional staff. (Ex. 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Exhibit 3- Nacoste Affidavit).

8. On Thursday Mousa again complained about the furniture, boxes, and cleaning and was again told that it could be addressed on Friday. At that time, Nacoste told Mousa that she did not believe their working together was going to work. (Ex. 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Exhibit 3- Nacoste Affidavit).

9. Mousa requested a meeting with Kasofsky on Thursday, February 22, 2007. (Ex. 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Exhibit 3- Nacoste Affidavit).

10. During the meeting, Mousa admonished Kasofsky for not having been present to welcome him on his first day. He complained of mis-matched colors of file cabinets and furniture. He also complained of boxes on his shelves which he had been told would be moved on Friday. (Ex. 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Kasofsky & Exhibit 3- Kasofsky Affidavit).

11. On Thursday, February 22, 2007, following her meeting with Mousa, Kasofsky directed Nacoste to end Mousa's probationary period. (Ex. 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Kasofsky & Exhibit 3- Nacoste & Kasofsky Affidavit).

12. Mousa was not advised of the termination until the afternoon of Friday 23, 2007. (Exhibit 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Link & Exhibit 3- Nacoste & Link Affidavit).

13. Mousa was hired by Kasofsky who also decided to terminate him after one week of work. (Exhibit 2 - Discovery Responses Interrogatory No. 6 & Exhibit 3- Kasofsky Affidavit).

14. Mousa's birth certificate was not seen or viewed by Nacoste or Kasofsky. They were not informed of Mousa's religion. (Exhibit 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Link & Exhibit 3- Nacoste, Kasofsky and Link Affidavits).

15. Mousa's birth certificate was requested by Human Resources Specialist Doris Hendricks on Wednesday and Mousa provided it to Hendricks on Friday afternoon. (Mousa depo. Pages 20-24, 30, 34 & 48).

16. The decision to terminate Mousa was made on Thursday, February 22, 2007 following Kasofsky's meeting with Mousa. (Exhibit 2- Discovery Responses, Interrogatory No. 10, Attachment 5- Statement of Nacoste & Kasofsky & Exhibit 3- Nacoste & Kasofsky Affidavit).

9. Mousa was not aware of any comments made about his ethnicity or religion during the time he was at CAHSD. (Mousa depo. Pages 30-31).

## LAW AND DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. Proc. 56(c). In determining whether the movant is entitled to summary judgment, the court reviews facts in the light most favorable to the non-movant and draws all reasonable inferences in his favor. *Coleman v. Houston Independent School District*, 113 F.3d 528 (5th Cir. 1997). After a proper motion for summary judgment is made, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The plaintiff in an employment discrimination case, bears the burden of proving that he has been the victim of intentional discrimination. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 508 (1993). The non-movant's burden, however, is not satisfied by some metaphysical doubt as to the material facts, or by conclusory allegations, unsubstantiated assertions or a scintilla of evidence. *Little*

*v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). Summary judgment is appropriate if the non-movant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Title VII provides in pertinent part that:

> It shall be an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin…

42 U.S.C. § 2000e-2(a). To survive summary judgment on a claim of unlawful employment discrimination, a plaintiff must prove that there is a genuine dispute of material fact concerning his *prima facie* case. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 793 (1973)).

**<u>Religious Discrimination Claim</u>**

Plaintiff alleges that his employment was terminated on Friday, February 23, 2007, shortly after he produced his birth certificate, which disclosed the fact that he is Muslim (doc. 1, p. 2; Mousa aff., ¶ 7). The undisputed facts, however, establish that the decision to terminate plaintiff's employment was made a day before plaintiff produced the birth certificate.[2] Moreover, during his deposition

---

[2] Rather than set forth evidence to controvert the statements made in the affidavit of Dr. Kasofsky, plaintiff challenges the credibility of the affiant (see doc. 20). However, it is well established that credibility determinations have no place in summary judgment. See e.g., *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374 (5th Cir. 2010) (" [courts] do not make credibility determinations at the summary judgment stage"); *Johnson v. Diversicare Afton Oaks,*

5

plaintiff stated that his religious discrimination claim is grounded entirely on the disclosure made in the birth certificate:

> Q. Other than them asking for your birth certificate, what other reasons do you have to say that it's religious discrimination?
> A. I don't have any other reason.
> Q. Did anyone make any comments to you about your religion?
> A. No, no.
> Q. Did –
> A. Actually, no one talk [sic] to me.
> Q. Did anyone make any derogatory comments about being a Muslim?
> A. No.
> Q. When you were given this induction checklist, it had birth certificate on there, correct?
> A. It is there, but they didn't ask at that time when I signed this. They asked for it after signing this.

(Mousa depo. doc. 13-3, pp. 30-31).[3]

"A knowledge requirement is logical and appropriate in religious discrimination cases because the plaintiff's membership in a protected class (e.g., a bona fide religion) is not readily discernible." *Van Koten v. Family Health Management, Inc.*, 955 F.Supp. 898, 901 (N.D.Ill. 1997) (citing *Beasly v. Health Care Service Corp.*, 940 F.2d 1085, 1088 (7 Cir. 1991)(recognizing knowledge requirement as an element of a prima facie case of religious discrimination).

---

*LLC*, 597 F.3d 673, 676 (5th Cir. 2010) ( "[a] court reviewing a summary judgment motion must not weigh the evidence or evaluate the credibility of witnesses"); *Stewart v. Mississippi Transp. Com'n*, 586 F.3d 321, 333, n. 1 (5th Cir. 2009) ("[c]redibility determinations, of course, are not the stuff of summary judgment affirmances").

[3] Defendant asserts that every person it employs is required to provide his or her birth certificate in accordance with the requirements set by the Louisiana State Retirement System, and defendant had no choice but to require plaintiff to produce his birth certificate (doc. 13-4, p. 12).

The undisputed facts establish that plaintiff did not inform defendant of his religion prior to defendant's decision to terminate plaintiff's employment. Moreover, plaintiff has set forth no evidence to establish a genuine dispute of fact as to whether anyone involved in the termination of his employment had any knowledge of his religious affiliation prior to his presentation of the birth certificate. Accordingly, the Court concludes that Plaintiff has failed to establish a genuine dispute of fact necessary to establish a prima facie claim of religious discrimination.

**Ethnic Discrimination Claim**

Plaintiff also alleges that defendant terminated his employment based on his Egyptian ethnicity. "In order to show a prima facie case of discriminatory discharge, a plaintiff must first establish that [he] (1) is a member of a protected class, (2) was subjected to an adverse employment action, (3) was qualified for [his] position, and (4) was replaced by someone outside of the protected class." *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 345 (5th Cir. 2007) (citing *Rutherford v. Harris County,* 197 F.3d 173, 179-80 (5th Cir. 1999). A plaintiff's establishment of a *prima facie* case gives rise to an inference of discrimination which shifts the burden of proof to the defendant who must then articulate a legitimate, non-discriminatory reason for the challenged employment action. *Texas Dept. of Comm. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the defendant

asserts such a reason, the inference of discrimination raised by the *prima facie* case drops from the case. At that point, summary judgment is appropriate unless the plaintiff can prove that the defendant's rationale is pretextual. *Id.*

Neither party disputes that plaintiff has satisfied the first, second, and third elements of a prima facie case of discrimination with regard to his national origin in that his national origin is Egyptian, he was qualified for the position, and his employment was terminated by defendant. Thus, to establish a prima facie case of discrimination, plaintiff need only set forth some evidence to establish the fourth prong.

In the present case, plaintiff has not only failed to set forth evidence to establish the fourth element of a prima facie case of discrimination, but has failed to even allege non-conclusory facts which would lead to a reasonable inference that his national origin played any part in the termination of his employment. Accordingly, the Court finds that plaintiff has failed to establish a prima facie case of discrimination on the basis of national origin and need not consider the same actor inference or the several non-discriminatory reasons provided by defendant for the termination.

## CONCLUSION

For all of the foregoing reasons, the motion for summary judgment, filed by defendant, Capital Area Human Services District (doc. 13), is hereby **GRANTED,** and this matter shall be dismissed with prejudice.

Baton Rouge, Louisiana, July 26, 2011.

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**